

# NUMBERS 13-23-00425-CR, 13-23-00426-CR, 13-23-00427-CR, 13-23-00428-CR, 13-23-00429-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GARFIELD GIBSON III,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

## ON APPEAL FROM THE 130TH DISTRICT COURT
## OF MATAGORDA COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña
Memorandum Opinion by Chief Justice Contreras**

Appellant Garfield Gibson III challenges the trial court's order revoking his community supervision and imposing prison sentences of up to twenty-five years in five felony cases. He contends: (1) the trial court abused its discretion by revoking his community supervision in all five cases, and (2) his trial counsel rendered ineffective

assistance by "essentially conced[ing]" to the allegations in the State's motion to revoke. We affirm.

## I.   BACKGROUND

On December 4, 2016, a Matagorda County grand jury returned an indictment charging Gibson with intentionally or knowingly leaving the scene of a motor vehicle collision causing serious bodily injury, a third-degree felony. *See* TEX. TRANSP. CODE ANN. § 550.021(c)(1)(B). On December 11, 2017, Gibson pleaded guilty to the offense, was convicted, and was sentenced to five years' imprisonment, with the sentence suspended and community supervision imposed for five years.[1] After the State filed motions to revoke on August 27, 2018, and April 1, 2021, the trial court continued Gibson on community supervision but modified its terms to include confinement in a substance abuse treatment facility for not less than ninety days or more than one year, and to extend the period of supervision by five years, respectively.

On March 29, 2021, Gibson was charged by indictment with two additional offenses: aggravated robbery, a first-degree felony alleged to have been committed on or about December 29, 2020, *see* TEX. PENAL CODE ANN. § 29.03[2]; and aggravated assault with a deadly weapon, a second-degree felony alleged to have been committed on or about January 25, 2021. *See id.* § 22.02(a)(2).[3] Another two offenses were charged

---

[1] Trial court cause number 17-129; appellate cause number 13-23-00425-CR.

[2] Trial court cause number 21-130-083; appellate cause number 13-23-00426-CR.

[3] Trial court cause number 21-130-084; appellate cause number 13-23-00427-CR. The March 29, 2021 indictments each included, for punishment enhancement purposes, an allegation that Gibson was a habitual felony offender. *See* TEX. PENAL CODE ANN. § 12.42(d).

by information on June 8, 2022: tampering with or fabricating physical evidence, a third-degree felony alleged to have been committed on or about January 25, 2021, *see id.* § 37.09(c)[4]; and continuous violence against the family, a third-degree felony alleged to have been committed from on or about November 27 to December 29, 2020. *See id.* § 25.11.[5] Gibson pleaded guilty to all four offenses on June 8, 2022. In the aggravated robbery and aggravated assault cases, the trial court deferred adjudication and placed Gibson on community supervision for ten years. In the tampering with evidence and continuous violence against the family cases, Gibson was convicted and sentenced to ten years' imprisonment, with the sentence suspended and community supervision imposed for ten years.

Between January 12 and January 30, 2023, the State filed motions to revoke community supervision in all five cases, and motions to adjudicate in the two deferred adjudication cases. The motions alleged various violations of the terms of Gibson's community supervision. Among other things, all five motions alleged that, between November and December of 2022, Gibson admitted to using or tested positive for ecstasy, marijuana, amphetamine, methamphetamine, cocaine, and alcohol. All five motions also alleged that Gibson failed to report to his probation officer on October 3, 2022; violated his curfew on numerous occasions between August and November of 2022; and failed to attend substance abuse counseling.

At the revocation hearing on May 18, 2023, the State offered into evidence

---

[4] Trial court cause number 22-130-193; appellate cause number 13-23-428-CR.

[5] Trial court cause number 22-130-194; appellate cause number 13-23-429-CR.

documents indicating that on December 19, 2018, Gibson pleaded guilty to two unrelated Class A misdemeanor offenses: possession of less than twenty-eight grams of a controlled substance in penalty group 3; and resisting arrest, search, or transportation. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.117; TEX. PENAL CODE ANN. § 38.03. The documents were admitted without objection.

Cindy Hammons testified she is the owner and operator of Gulf Coast Monitoring Specialists, and her company provided a GPS monitor for Gibson to wear as part of his community supervision conditions. Hammons identified records indicating that, according to the GPS monitor, Gibson violated his curfew thirteen times between August 11 and November 26, 2022, as alleged in the motions to revoke.

Travis Dykes, a Matagorda County Adult Probation employee, testified he administered urinalysis drug tests to Gibson four times between 2018 and 2022. Dykes identified records showing that, on July 17, 2018, Gibson tested positive for amphetamines, cocaine, alcohol, THC, and methamphetamines; on August 26, 2019, Gibson tested positive for alcohol and cocaine; on November 9, 2020, Gibson tested positive for THC, amphetamines, MDMA, and cocaine; and on November 15, 2022, Gibson tested positive for cocaine, methamphetamines, amphetamines, THC, and alcohol.

Kimberly Sparks, Gibson's probation officer, testified that on November 9, 2020, Gibson admitted to her that he used amphetamines, marijuana, cocaine, and Depakote, a prescription medication which was not prescribed to him. On November 15, 2022, Gibson admitted to Sparks that he used marijuana on November 3; ecstasy on November

4

5 and 11; and alcohol on November 14. On December 19, 2022, he admitted to Sparks that he used marijuana on December 17 and ecstasy on December 16 and 17. Documents signed by Gibson, in which he admitted to the above drug and alcohol use, were admitted into evidence. Sparks further stated that, as alleged in the State's motions to revoke, Gibson failed to report to her on numerous occasions between 2018 and 2022, he failed to complete community service hours, and he failed to participate in counseling.

Following the hearing, the trial court found true all of the allegations in the motions to revoke which had not been abandoned by the State, including all of the alleged violations detailed above. The trial court revoked Gibson's community supervision and adjudicated him guilty in the deferred adjudication cases. In final judgments dated September 28, 2023, Gibson was sentenced to the following concurrent prison terms: (1) five years for failing to stop after a collision causing serious bodily injury; (2) twenty-five years for aggravated robbery; (3) twenty-five years for aggravated assault with a deadly weapon; (4) ten years for tampering with or fabricating physical evidence; and (5) ten years for continuous violence against the family. This appeal followed.

## II.    DISCUSSION

### A.    Revocation of Community Supervision

By his first issue, Gibson argues that the State failed to meet its burden to prove that he violated the terms and conditions of his community supervision.

We review a trial court's order revoking community supervision for an abuse of discretion. *Martinez v. State*, 563 S.W.3d 503, 510 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.). The trial court abuses its discretion if its decision falls outside the zone of

5

reasonable disagreement. *See Buntion v. State*, 482 S.W.3d 58, 71 (Tex. Crim. App. 2016). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated a condition of community supervision as alleged in the motion to revoke. *Cobb v. State*, 851 S.W.2d 871, 873–74 (Tex. Crim. App. 1993) (noting that "a probation revocation proceeding is neither a criminal nor a civil trial, but rather an administrative hearing"); *see Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). The preponderance of the evidence standard is met when the greater weight of the credible evidence before the trial court supports a reasonable belief that a condition of community supervision has been violated. *Rickels*, 202 S.W.3d at 763–64; *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974). Proof of a single violation is sufficient to support a revocation. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012). Thus, to prevail on appeal, an appellant must successfully challenge all of the findings that support the revocation order. *See id.*

With respect to each cause number, Gibson baldly asserts that "[t]here is no record and it is unclear that the trial court found any specific terms of Appellant's community supervision to be true [sic]." He further claims without elaboration that "[i]t violates Appellant's due process when all parties including the Court know when the plea is accepted that immediate violation will result."[6] He cites case law providing that "due process requires a neutral and detached hearing body or officer," *Gagnon v. Scarpelli*,

---

[6] As Gibson notes in the "Statement of Facts" section of his brief, the transcript of the revocation hearing does not indicate whether, or how, Gibson pleaded to the various violation allegations. Accordingly, it is not true that "all parties including the Court kn[e]w when the plea [wa]s accepted that immediate violation will result." In any event, Gibson does not explicitly argue that he is entitled to reversal for this reason.

411 U.S. 778, 786 (1973); however, he does not apply that law to the actual facts of this case.[7] *See* TEX. R. APP. P. 38.1(i).

This issue is entirely devoid of merit. As Gibson seems to recognize, the trial court stated exactly which violations it found to be true at the end of the May 18, 2023 hearing. And having reviewed the record, we conclude it supports those findings by a preponderance of the evidence. We note that most of the violations established at the hearing concerned Gibson's conduct prior to June 8, 2022—that is, prior to the time community supervision was imposed in four out of the five cases. Nevertheless, uncontroverted witness testimony established that, even after that date, Gibson: (1) violated his curfew thirteen times; (2) tested positive for cocaine, methamphetamines, amphetamines, THC, and alcohol; (3) admitted to his probation officer that he used marijuana, ecstasy, and alcohol; and (4) failed to report to his probation officer at least once. There is no dispute that these behaviors violated the terms of his community supervision in all five cases. The trial court therefore did not abuse its discretion in revoking community supervision. Gibson's first issue is overruled.

## B. Ineffective Assistance of Counsel

By his second issue, Gibson contends that his trial attorney provided ineffective assistance, thereby depriving him of his constitutional right to counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.051; *Strickland v.*

---

[7] At no point does Gibson argue, implicitly or explicitly, that the trial judge was biased or impartial. Instead, his argument as to this issue consists mainly of a lengthy (and largely unattributed) quotation from *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006), concerning whether the trial court failed to consider the full applicable range of punishment. *Brumit* is irrelevant to this case.

*Washington*, 466 U.S. 668, 686 (1984).

To obtain a reversal of a conviction on grounds of ineffective assistance of counsel, an appellant must show: (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (citing *Strickland*, 466 U.S. at 687). "Deficient performance means that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Ex parte Napper*, 322 S.W.3d 202, 246 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 687). "The prejudice prong of *Strickland* requires showing 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 248 (quoting *Strickland*, 466 U.S. at 694). "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

The burden is on the appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Id.* The appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689. "We commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

Gibson claims that he "was not represented by a zealous advocate" at the May 18,

2023 hearing. He notes correctly that his counsel "did not challenge any of the State's allegations" and "presented no defense" at that hearing. Indeed, according to the record, Gibson's trial counsel did not ask questions of any witnesses, nor did he offer any evidence or argument on behalf of his client. Gibson cites authority establishing that "[a] criminal defense lawyer has a duty to make an independent investigation of the facts of a case, which includes seeking out and interviewing potential witnesses," *Ex parte Welborn*, 285 S.W.2d 391, 393 (Tex. Crim. App. 1990), and that "[a] failure to do so is to be ineffective, if not incompetent, where the result is that any viable defense available to the accused is not advanced." *Ex parte Ybarra*, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982). As to how he was prejudiced by counsel's performance, Gibson merely contends:

> [T]here is no doubt that defense counsel's failure to make a meaningful mitigation review[] deprived him of the Court hearing a single mitigating factor. Mitigating evidence clearly would have been admissible. The Court would have considered it and would have been influenced by it and would have not revoked his probation.

On this record, neither *Strickland* prong has been met. Gibson does not point to anything in the record establishing that his trial counsel in fact failed to seek out potential witnesses, nor does he identify any "viable defense" which may have been available to him. *See Welborn*, 285 S.W.2d at 393; *Ybarra*, 629 S.W.2d at 946. Relatedly, there is nothing in the record indicating what "mitigating evidence" was available such that, had counsel produced it at trial, there would be a reasonable probability of a different result.[8]

---

[8] We note that "claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *see Thompson v. State*, 9 S.W.3d 808, 814–15 (Tex. Crim. App. 1999) (noting that a habeas application would "provide an opportunity to conduct a dedicated hearing to consider the facts, circumstances, and rationale behind counsel's actions at . . . trial.").

In any event, as the State notes, counsel's failure to question witnesses and present evidence may have been a legitimate trial strategy, with the objective being to avoid "underscor[ing] the flagrancy of Gibson's violations." Therefore, counsel's conduct was not "so outrageous that no competent attorney would have engaged in it." *See Andrews*, 159 S.W.3d at 101. We overrule Gibson's second issue.

### III.    CONCLUSION

The trial court's judgments are affirmed.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
9th day of May, 2024.